NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EARL BETTERSON, JR. | : | |
| Plaintiff, | : | Civ. No. 22-4839 |
| v. | : | |
| | : | **OPINION** |
| LORI STRUNCK, et al., | : | |
| Defendants. | : | |

**CECCHI, District Judge.**

Pro se plaintiff Earl Betterson, Jr., an inmate at East Jersey State Prison ("EJSP"), seeks to commence a lawsuit pursuant to 42 U.S.C. § 1983 arising out of allegedly deficient treatment he received for a tooth infection while incarcerated at EJSP and Northern State Prison ("NSP"). ECF No. 1. He also brings state law claims for negligence and negligence per se. *Id*. Also before the Court is Betterson's motion for leave to file an amended complaint removing as party to the action defendant Victoria L. Kuhn, Commissioner of the New Jersey Department of Corrections ("DOC"). ECF No. 6 at 1. In a previous order (ECF No. 2), the Court denied Betterson's motion to proceed in forma pauperis ("IFP") (ECF No. 1-2) because the IFP application was not submitted on the proper form and did not include the necessary account statement certified by a facility official. Betterson has now corrected these deficiencies. ECF No. 3. For the reasons below, Betterson's motion to proceed IFP is granted, his Complaint is dismissed in part and permitted to proceed in part, and his motion for leave to amend is denied as moot.

I.   **IFP**

A prisoner seeking to file a civil action IFP must submit (1) an affidavit, including a statement of all assets, stating that the prisoner is unable to pay the fee, and (2) a certified copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of his complaint. 28 U.S.C. § 1915(a)(1),(2). Betterson has complied with these requirements. ECF No. 3. Accordingly, his IFP motion is granted. Nonetheless, the Court must screen the Complaint, as further explained below. *See* 28 U.S.C. § 1915A(a).

II.  **COMPLAINT**

A.   **Factual Allegations**

The Complaint contains the following factual allegations, which for screening purposes will be accepted as true:

On September 2, 2016, Betterson complained about an abscess above his infected tooth #14 (*i.e.*, the first upper molar on the left side). ECF No. 1 at 4. During a dental visit five weeks later, on October 7, 2016, the dental assistant "acknowledged the infected tooth and drained the puss and blood . . . and [Betterson] was rescheduled for follow-up a dentist appointment because no dentist was available and/or have arrived yet." *Id.* Betterson was unable to eat properly due to swollen gums and pain, and on October 30, 2017, he "was prescribed 30 Amoxicillin 500 mg pills and 30 Ibuprofen 600 mg pills for the infection . . . and pain." *Id.* During 2018 and 2019, "no treatment was done to tooth #14[,] only more prescribed Acetaminophen." *Id.*

On August 24, 2020 (*i.e.*, after the onset of the pandemic), Betterson "continued to complain about the issues he was experiencing with tooth #14 and explained to the dental provider that swelling has continued to come and go (referring to his gums and face). They prescribed him 30 Amoxicillin 500 mg pills and 30 Ibuprofen 600 mg pills for the infection above tooth #14." *Id.*

at 5. On September 9, 2020, Betterson "reiterated his request for the extraction of tooth #14, but was again told that due to issues related to Covid-19[,] surgery could not be performed to remove the tooth. [Betterson] was given 30 Ibuprofen 600 Mg pills for pain." *Id.* On September 17, 2020, Betterson "complained about the pressure and pain above tooth #14, and showed the dentist the bump on his gums where puss and blood kept leaking from. [Betterson] was prescribed 30 more Ibuprofen 600 mg pills for the infection and pain." *Id.*

Betterson "filed a grievance with the administration at EJSP on March 15, 2021, and eight days later to Central Office on March 23, 2021 to force the dental department to pull[] the infected rotted tooth because he was in tremendous pain, and out of fear this infection could be life threatening." *Id.* at 6. The March 15 grievance reads:

> I am in pain and the left side of my face is swollen due to the abscess that I have (for more than a year) that the denial departments in D.O.C is refusing to treat. They keep giving me antibiotics and th[e]n forget to call me back down to pull the tooth with the abscess. Antibiotics only temporarily relieves the pain, but then the pain and pus eventually comes back. Can you please help me[?]"

ECF No. 1-3 at 1. The March 23 grievance reads:

> I've had an abscess for more than a year since I was housed at N.S.P that I've complained about numerous times. The Dental Department keeps giving me antibiotics but fail to call me back each time to pull the tooth with the infection. Pus and blood keeps running down my throat into my system causing me to have diarrhea for 8 months, swollen gums, severe stomach pains, and headaches. I am forced to take 1,600 mg Ibuprofen tablets 8am in the morning and 10pm at night to fight and calm down the excruciating pain I am in. I brought this matter to the administrator's attention here and Ms. Sweeney notified the dental department to assess me immediately which they have not. I need to D.O.C Commissioner to put pressure on the dental department to handle this serious medical condition immediately because this pus can reach my heart and kill me. Thank you for your help.

*Id.* at 2. On March 25, 2021, "the dental department at [EJSP] extracted [Betterson's] tooth #14 and he was prescribed pain medication after the surgery." ECF No. 1 at 6. During the visit for extraction, Dr. Rick Ogurek, DMD, told Betterson that "it is a myth that a patient must be

prescribe[d] antibiotics[] before pulling the infected tooth," and that he did not "know why his colleagues prescribed [Betterson] so many antibiotics pills to take." *Id.* at 8.

Leading up to the extraction, Betterson was suffering from diarrhea and severe abdominal distress and was "constantly dehydrated." *Id*. at 6–7. He requested an appointment with a doctor, and on May 14, 2021 (*i.e.*, after the extraction), he saw Dr. Barrington Lynch, MD, at EJSP. *Id.* at 7; ECF No. 1-3 at 7. "Post tooth extraction stool samples revealed that the overuse of the above prescribed medications and antibiotics caused extreme damages to the lining of [Betterson's] stomach." ECF No. 1 at 7–8. Dr. Lynch told Betterson that he had "diarrhea syndrome due to overuse of antibiotics for dental abscess/procedure and that wiped out the floor lining of your stomach." *Id.* at 8. Dr. Lynch "prescribed [Betterson] Imodium A-D 2MG Tabs for the diarrhea for 10 days, Bismatrol 262 MG/15ML SUSP for abdominal pains for 5 days, Flagyl 500 MG Tabs for 10 days and Acidophilus Probiotic Tablet for 30 days to repair [Betterson's] stomach lining." *Id*. He also told Betterson to "eat bread and crackers for two to three weeks to strengthen his coating of his stomach lining." *Id*.

**B.     Claims**

Betterson brings a § 1983 claim for deliberate indifference to serious medical needs, and state tort claims for negligence and negligence per se against the following defendants: (1) Lori Strunck, RDH, occupational health care provider assigned to NSP; (2) Liane Gawroriski[1], RN, nurse practitioner assigned to NSP; (3) Xorine Villegas, RN, nurse practitioner assigned to NSP; (4) Haseeb Mahmood, DMD, dentist assigned to NJSP and EJSP; (5) Samual[2] Lopez, DMD,

---

[1] The docket lists this defendant as "Gawrorisk," but the name is spelled Gawroriski in the annexed medical records.

[2] The docket lists this defendant as "Samuel," but the name is spelled "Samual" in the caption of Betterson's complaint and in the annexed medical records.

4

dentist assigned to NJSP and EJSP; (6) Joseph Narvaez, DMD, dentist assigned to NJSP and EJSP; (7) Rick Ogurek, DMD, dentist assigned to NJSP and EJSP; and (8) Kuhn, Commissioner of the New Jersey DOC. ECF No. 1 at 2–3. Betterson states that for four years, "the health service department failed to respond reasonably by providing [him] adequate treatment such as pulling the rotted tooth causing the infection," and "[t]he official's deliberate indifference caused [him] further significant injury when they provided him with inadequate treatment and over prescribed him excessive amounts of antibiotic and ibuprofen pills for years creating a serious injury." *Id.* at 5 (bolded text omitted).

Betterson argues that Drs. Mahmood, Lopez, Narvaez, and Ogurek exercised deliberate indifference to his health by refusing "to fulfill any of [his] requests to extract tooth #14 at a much earlier date." *Id.* at 6. He contends that if Strunck, Villegas, Gawroriski, Lopez, and Ogurek "would have reviewed [his] medication records before prescribing additional medication they would have acknowledged that [he] was being given excessive amounts of Ibuprofen, Acetaminophen, and Antibiotics for pain." *Id.* at 6–7. In support of these allegations, Betterson attaches a "Medications Report" to his Complaint indicating that he was prescribed medication during the relevant time by the following defendants: Villegas (ECF No. 1-3 at 10–11, 13–15), Mahmood (*id.* at 11), Narvaez (*id.* at 16), Gawroriski (*id.* at 16–18), Lopez (*id.* at 20), and Ogurek (*id.* at 21).

Betterson states that he "continued to suffer from migraines, headaches, stomach pain, diarrhea, dehydration and general pain throughout his body," and he "was unable to eat properly off and on throughout the years, and days on end after the surgery was performed." ECF No. 1 at 7. He requests a judgment "in an amount sufficient to compensate him for the pain and mental anguish suffered by him due to the deliberate indifference and failure to provide adequate medical

5

care and emergency surgery to extract his tooth, but in no event less than One Million ($1,500,000), together with his attorney's fees and costs, and such additional relief as this Court may deem just and proper." *Id.* at 10.

### III. DISCUSSION

#### A. Screening Standard

District courts must review civil complaints filed by prisoners, *see* 28 U.S.C. § 1915A(a), and dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

To survive the court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### B.   Section 1983 Claim

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted).

A supervisor may not be held vicariously liable for the actions of his or her subordinates under § 1983. *See, e.g.*, *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Rather, to adequately plead a § 1983 claim against a supervisor, a plaintiff must plead facts which, if proven, would show that the supervisor had personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). There are two theories of supervisory liability. Under the first, a plaintiff must plausibly allege that the supervisor enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–36 (2010). Under the second, a plaintiff must plausibly allege that the supervisor

"participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citation omitted). To state a cognizable Eighth Amendment claim for improper medical care, a prisoner must allege: (1) a serious medical need and (2) behavior on the part of prison officials constituting deliberate indifference to that need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

As to the first prong, a serious medical need is: (1) "one that has been diagnosed by a physician as requiring treatment"; (2) "one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention"; or (3) one for which the denial of treatment would result in the "unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Other relevant factors include "the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Maldonado v. Terhune*, 28 F. Supp. 2d 284, 289 (D.N.J. 1998).

The second element of the *Estelle* test is subjective and "requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need," *i.e.*, that prison

officials knew of, and disregarded, an excessive risk to an inmate's health or safety. *Holder v. Merline*, No. 05-1024, 2005 WL 1522130, at *4 (D.N.J. June 27, 2005) (citing *Natale*, 318 F.3d at 582). Mere negligence is insufficient; rather, deliberate indifference requires a "reckless disregard of a known risk of harm." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994)). Courts have found deliberate indifference "in situations where there was objective evidence that a plaintiff had serious need for medical care, and prison officials ignored that evidence . . . [and] in situations where necessary medical treatment is delayed for non-medical reasons." *Natale*, 318 F.3d at 582 (internal citations and brackets omitted).

Here, Betterson claims that the delay in extracting the infected tooth resulted in pressure, pain, swelling, leaking pus and blood, and an inability to eat properly for approximately four years. ECF No. 1 at 4–7. He further claims that the alleged over-prescription of antibiotics and pain medication resulted in diarrhea, severe abdominal distress, constant dehydration, and damage to his stomach lining. *Id.* at 6–8. Accepting these allegations as true, Betterson has sufficiently alleged a serious medical need, as courts in this Circuit and others have recognized. *See Talbert v. Corr. Dental Assocs.*, 731 F. App'x 145, 150 (3d Cir. 2018) ("There is no dispute that Talbert's need to have a tooth extracted due to an infection is a serious medical need."); *Robison v. Sutter*, No. 21-00027, 2021 WL 6054944, at *7 (W.D. Pa. Nov. 22, 2021) (allegation of a serious medical need found where "delay in dental treatment resulted in pain, tooth breakage, infection, swelling, neck pain, and the loss of a tooth surface), *report and recommendation adopted*, 2021 WL 6052112 (W.D. Pa. Dec. 21, 2021); *Brooking v. D.O.C.*, No. 15-02134, 2019 WL 355727, at *3 (M.D. Pa. Jan. 29, 2019) ("Brooking's medical needs were indeed serious: although Brooking admits he suffered no 'immediate physical injury' in the end, his allegations that the delay in treatment

9

resulted in clearly visible facial swelling, severe pain, and the loss of a tooth suffice." (internal citation omitted)).[3]

Accepting the allegations as true at this early stage of litigation, Betterson has also plausibly alleged a medical indifference claim against the following defendants listed on the Medications Report annexed to his Complaint:[4] Mahmood (ECF No. 1-3 at 11), Narvaez (*id.* at 16), and Lopez (*id.* at 20). Specifically, Betterson has sufficiently alleged the personal involvement of these medical professionals, as each appears to be a dentist who treated him during the yearslong period in which he complained of his infected tooth. ECF No. 1-3. He has also sufficiently alleged deliberate indifference, because, accepting the allegations as true, Drs. Mahmood, Narvaez, and Lopez refused to extract the infected tooth "at a much earlier date," causing him pain, swelling, leaking pus and blood, and an inability to eat properly during the

---

[3] *See also Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989) (deliberate indifference claim stated where the plaintiff made repeated requests for treatment for infected gums and broken teeth, yet received no care for three months); *Fields v. Gander*, 734 F.2d 1313, 1315 (8th Cir. 1984) (claim stated where the defendant "knew of the pain [the plaintiff] was suffering . . ., observed swelling in [his] face, and still refused to provide dental care for him for up to three weeks"); *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980) ("Prisoners generally have more extensive dental problems than the average citizen. Consequently dental care is one of the most important medical needs of inmates. . . . [I]nmates when not treated in a timely fashion are prone to develop infections and abscesses leading to continued and unnecessary pain and loss of teeth."); *Scutella v. Erie Cnty.*, No. 19-cv-245, 2020 WL 4904587, at *5 (W.D. Pa. Aug. 20, 2020) (Eighth Amendment claim supported where defendant recognized and acknowledged that plaintiff's impacted tooth needed immediate attention, including referral to an oral surgeon, but such treatment was not provided); *King v. Wang*, No. 14-1817, 2017 WL 3188949, at *4 (E.D. Cal. July 27, 2017) (claim stated where the plaintiff alleged he suffered excruciating pain for three days because the defendant nurse, despite knowing he had an abscessed tooth, falsely claimed there was nothing she could do and directed him to simply file a medical request form), *report and recommendation adopted*, 2017 WL 4386868 (E.D. Cal. Oct. 3, 2017).

[4] *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Alpizar-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018) (on a motion to dismiss, the court considers "only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents.").

relevant years. *Natale*, 318 F.3d at 582 (deliberate indifference found where need for serious medical care exists and "prison officials ignored that evidence" or "medical treatment is delayed for non-medical reasons"); *Holder*, 2005 WL 1522130, at *4 (subjective element met where prison officials knew of, and disregarded, an excessive risk to an inmate's health or safety).

Betterson has not, however, alleged a deliberate indifference claim against defendants Villegas, Gawroriski, or Ogurek. As to Villegas and Gawroriski (both nurses), Betterson alleges that they prescribed him "excessive amounts of Ibuprofen, Acetaminophen, and Antibiotics for pain," which resulted in diarrhea, abdominal distress, constant dehydration, and damage to his stomach lining. ECF No. 1 at 4–8. The most plausible inference arising from this allegation is that Villegas and Gawroriski, by prescribing pain medication, attempted to alleviate rather than exacerbate Betterson's suffering. Providing excessive amounts of ibuprofen and antibiotics without considering the side effects may have been negligence, but it is not indicative of a wanton disregard for Betterson's suffering. While these facts may give rise to a negligence or medical malpractice claim, they do not, without more, properly allege a constitutional violation. *See, e.g.*, *Archie v. Fox*, No. CV223267, 2022 WL 1830779, at *2 (D.N.J. June 2, 2022) ("[A] plaintiff who demonstrates conduct amounting to only negligence or medical malpractice will fail to make out a claim for relief under § 1983.").

Ogurek, the dentist who appears to have pulled the tooth, does not appear in the medical records until the date Betterson's tooth was pulled, and the Complaint does not allege that Ogurek was involved in his care and treatment before that date. In other words, there is no allegation or indication from the records currently available to the Court that Ogurek was involved in the

treatment of Betterson's tooth until the day the tooth was extracted.[5] Betterson has therefore not plausibly alleged that Ogurek was deliberately indifferent to his serious medical need; indeed, from the Complaint and available records, Ogurek appears to be the dentist who finally resolved Betterson's dental saga.

Betterson also has not alleged a viable medical indifference claim against Strunck and Kuhn, because he has not plausibly alleged the personal involvement of these defendants. Betterson alleges that if Strunck "would have reviewed [his] medication records before prescribing additional medication [she] would have acknowledged that [he] was being given excessive amounts of Ibuprofen, Acetaminophen, and Antibiotics for pain." *See* ECF No. 1 at 7. However, without any indication that Strunck was (1) treating him (Strunck is not one of the healthcare providers listed on the Medications Report (ECF No. 1-3)) or (2) otherwise personally involved in his medical treatment, this allegation does not sufficiently state a claim for deliberate indifference.

Likewise, Betterson fails to allege that Kuhn, who was Commissioner of the New Jersey DOC, was personally involved in his alleged improper medical treatment; rather, he alleges only that Kuhn is "responsible for the hiring of the healthcare provider defendants." ECF No. 1 at 3. This allegation is an insufficient basis upon which to establish Kuhn's personal involvement. *See Batts v. Giorla*, 550 F. App'x 110, 112–13 (3d Cir. 2013) ("Batts has not claimed that Giorla, the Commissioner of PPS, had a role in providing or determining the medical treatment that Batts received. While he claims that he sent letters to Giorla complaining about his medical care, that is not sufficient to establish liability under § 1983."); *Chapolini v. City of Phila.*, No. 22-284, 2022 WL 815444, at *13 (E.D. Pa. Mar. 17, 2022) ("general and vague allegation[s]" are insufficient

---

[5] To the extent Ogurek prescribed Ibuprofen for the 10 days leading up to the date the tooth was extracted (ECF No. 1-3 at 21), the discussion above regarding Villegas and Gawroriski would apply to Ogurek as well, and thus there is not a properly alleged constitutional violation regardless.

12

"to allege the requisite personal involvement of Commissioner Carney to establish a basis for liability under section 1983"); *Muhammad v. City of Lewisburg, PA*, No. 21-0284, 2022 WL 779405, at *4 (M.D. Pa. Jan. 20, 2022) ("Plaintiff does not allege that the Commissioners had any personal involvement in violating Mr. Muhammad's rights. In fact, Plaintiff does not allege that the Commissioners even knew" about the incident and conditions at issue), *report and recommendation adopted*, 2022 WL 774878 (M.D. Pa. Feb. 16, 2022).

Further, to the extent Betterson asserts that his grievances support a plausible inference of Kuhn's personal involvement, he is mistaken. ECF No. 1-3 at 2 (Betterson states in a grievance that he "need[s] the D.O.C Commissioner to put pressure on the dental department to handle this serious medical condition . . . ."). A defendant's review and denial of a prisoner's grievance is not sufficient to establish the defendant's personal involvement in an underlying violation of the prisoner's constitutional rights. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

Accordingly, Betterson's claims against Villegas, Gawroriski, Ogurek, Strunck, and Kuhn are dismissed.

### C. State Law Claims

In addition to his § 1983 claims, Betterson seeks to bring negligence claims under state law, ECF No. 1 at 1–2, and the allegations described above may state a negligence or medical malpractice claim against at least some of the defendants. However, because the defendants are public employees of the State of New Jersey, the New Jersey Tort Claims Act ("TCA," N.J.S.A. 59:1 *et seq.*) required Betterson, before filing this lawsuit, to file a notice of claim no later than the 90th day after accrual of his cause of action. N.J.S.A. 59:8-8. If he "failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in

13

N.J.S. 59:8-9,"[6] he is "forever barred from recovering against a public entity or public employee."[7] *Id.*

The TCA does not define when a cause of action accrues, but "generally, in the case of tortious conduct resulting in injury, the date of accrual will be the date of the incident on which the negligent act or omission took place." *Talian v. Peck*, No. A-2357-19, 2021 WL 955483, at *3 (N.J. Super. Ct. App. Div. Mar. 15, 2021) (internal brackets, quotation marks, and citation omitted). An exception is the discovery rule, which applies if "the victim either is unaware that he or she has been injured or, although aware of an injury, does not know that a third party is responsible." *Id.* (brackets and citation omitted).

The events underlying Betterson's Complaint occurred more than one year before he filed it, and the latest he could have discovered that he was potentially the victim of negligence or malpractice was May 14, 2021, when Dr. Lynch allegedly informed him that his diarrhea and other gastrointestinal maladies were the result of overprescription of antibiotics and painkillers. ECF No. 1-3 at 6.

Betterson has not alleged that he timely satisfied the notice of claim requirement of the TCA. Therefore, the Court will dismiss Betterson's state tort claims without prejudice. *See Melber v. United States*, 527 F. App'x 183, 186 n.2 (3d Cir. 2013) (citing *State v. J.R.S.*, 939 A.2d 226, 229 (N.J. Super. Ct. App. Div. 2008) (noting the Appellate Division of the New Jersey Superior Court has suggested the TCA claim notice requirement is jurisdictional). If Betterson can

---

[6] N.J.S.A. § 59:8-9 provides, in relevant part: "A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby."

[7] The claim must be filed "with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission." N.J.S.A. 59:8-7.

truthfully allege that he satisfied the notice requirements of the TCA, he may include his state law claims in an amended complaint, and the Court will consider them at that point.[8]

## IV.   CONCLUSION

For the reasons stated above, Betterson's IFP application is granted and the Complaint will be permitted to proceed, in part, as follows: (1) the § 1983 claims against Mahmood, Narvaez, and Lopez may proceed; (2) the § 1983 claims against Villegas, Gawroriski, Ogurek, Strunck, and Kuhn are dismissed without prejudice; and (3) the state claims against all defendants are dismissed without prejudice.  Further, in light of the Court's dismissal of the claims against Kuhn, Betterson's motion for leave to file an amended complaint removing Kuhn as a defendant (ECF No. 6) is denied as moot.  An appropriate Order follows.

Dated: November 25, 2024

                                              */s/ Claire C. Cecchi*
                                              HON. CLAIRE C. CECCHI
                                              United States District Judge

---

[8] This Court would typically lack subject-matter jurisdiction to hear medical malpractice claims against non-diverse defendants.  But, as the Court has federal question jurisdiction over Betterson's § 1983 claims under 28 U.S.C. § 1331, and since the medical malpractice claims arise from the same facts, the Court may exercise supplemental jurisdiction over his claims under state law.  *See* 28 U.S.C. § 1367; *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552–65 (2005).